WILLIAM S. MCMAHON *vs.* CHARLES S. RICE.

Suffolk.    March 7, 1911. — May 18, 1911.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.

At the trial of an action by a carpenter against his employer for personal injuries,
it appeared that the plaintiff had been a carpenter for thirty years and, when
injured, was assisting in the remodelling of a building, which was being done
under the defendant's personal supervision. In the course of the work certain
brick walls had to be taken down and the plaintiff had helped to put up a fence
around a sidewalk adjacent to the building, as to which he testified that he did
not " know what it was for unless it was to keep people out and from getting
hurt from anything falling from the building." At a later stage of the work the
plaintiff was directed to move a temporary brace which was supporting the sec-
ond floor of the building and to put in a stronger one and, while so doing, was
struck on the head by a brick which had slipped from the control of a fellow
workman who was helping to tear down the brick wall. There was no evidence
which tended to show that the methods adopted by the defendant in tearing
down the wall and disposing of the brick were unusual or improper. *Held,* that
the defendant had a right to assume that the plaintiff could and would take care
of himself so far as respected the usual and obvious dangers of employment, and
that he needed no instruction and warning ; and that therefore, if the plaintiff's
injury was caused by negligence of any one, it was by negligence of a fellow
servant, for which the defendant was not liable.

TORT for personal injuries, received while the plaintiff was at
work for the defendant in remodelling the two lower stories of a
brick building numbered 15 on Cornhill, in Boston, and extend-
ing through to Brattle Street. Writ dated November 15, 1907.

In the Superior Court the case was tried before *Bond,* J. The
facts are stated in the opinion. At the close of the plaintiff's
case, the defendant rested and the judge ordered a verdict for
the defendant. The plaintiff alleged exceptions, which, after
the death of *Bond,* J., were allowed by *Richardson,* J.

*W. H. Brown,* (*J. H. Coakley* with him,) for the plaintiff.

*W. H. Hitchcock,* for the defendant.

HAMMOND, J. While the plaintiff was at work for the defend-
ant in remodelling the two lower stories of a brick building, he was
directed by the defendant, who personally superintended the work,
to move a temporary brace which was supporting the second floor,
and to put in a stronger one. As soon as he got to the place in-

dicated and as he was taking hold of the brace, he was struck on
the head by a brick which had slipped from the control of a fel-
low workman who was engaged in tearing down a part of the
wall upon the Brattle Street side of the building. The plaintiff
began to work for the defendant on the morning of the day of
the accident, which occurred at about one o'clock P. M. He
testified that he knew the building was going to be remodelled;
that he did not notice during the forenoon that any bricks had
been taken from the wall, although when he came back from
dinner he did notice an opening in it about twenty feet from the
ground, and that some of the wall was down, but he "couldn't
tell what they were doing"; that he saw no staging on the
Brattle Street side and saw no men at work about the wall, and
that he did not stop to think "where the bricks had gone from
the wall."

One Rudd testified as follows as to the way in which the work
of tearing down the wall was carried on: "The wall had been
taken down, to some extent at least, before the day of the acci-
dent. The wall was taken down by men employed by Mr. Rice
and they chopped and loosened the brick with chisels and were
supposed to chuck them down on the outside. There was a
staging on the outside of the wall. The workmen cut at the
brick with hammer and chisel, loosened them up and chucked
them down, they took them in their hands and threw them
down on this enclosed sidewalk. On the morning of the acci-
dent there were a good many brick in this enclosure. On the
morning of the accident I couldn't tell how much of the wall
was taken down. Some of it was down. The men were not sup-
posed to throw brick on the inside of the building. I didn't see
any thrown there." He described the circumstances of the acci-
dent as follows: "I was on the first floor and McMahon [the
plaintiff] went below where I couldn't see him. . . . Some one
said 'Look out' and I looked up just in time to see the mason
making a grab for those bricks. There was no part of the wall
fell except this bunch of bricks which the workmen had just dis-
lodged. . . . When I heard the words 'Look out' it was then I
looked and saw the brick falling down. The workman was
knocking the brick off not directly above the plaintiff but some-
what to one side. Three or four feet to one side, but when he

grabbed the brick he shoved it and of course it went off somewhat sideways." This witness further testified that "taking down walls by taking out the bricks and throwing them down was about the only way you can take them down, the only way I ever saw it done."

There was no evidence that would justify a jury in coming to the conclusion that the way adopted was unusual or improper. But the plaintiff contends that the defendant was negligent in ordering him to work upon the brace without proper precautions to protect him. He invokes the familiar rule that the master owes to his servant the duty of proper protection and to inform him of danger.

The building does not seem to have been a large one. The two lower stories were to be remodelled, a work which of necessity required some changes. The plaintiff had been a carpenter for thirty years and must be assumed to have known what kind of work was going on and how it was being done. Indeed he testified that the first thing he did on the building was to help put up a fence around the sidewalk on Brattle Street, that he did not "know what it was for unless it was to keep people out and from getting hurt from anything falling from the building." Whether or not he was so blind or inattentive, as he testified, to the manner in which the work, especially the demolition of the wall, was going on, it is certain that everything was before his eyes, and that the defendant had the right to assume that an experienced carpenter like the plaintiff could and would properly take care of himself so far as respected the usual and obvious dangers of the employment, and that he needed no instruction. Independent of any question of the assumption of risk by the plaintiff (as to which see *Marshall* v. *Norcross,* 191 Mass. 568), it cannot be said that there was any negligence on the part of the defendant in failing to inform the plaintiff of the possibility that a brick might escape from the control of the men at work on the wall. If there was any negligence it was that of the fellow servant who dropped the brick. For such negligence the defendant is not answerable. See *Flynn* v. *Campbell,* 160 Mass. 128; *Fay* v. *Wilmarth,* 183 Mass. 71; *Boisvert* v. *Ward,* 199 Mass. 594.

*Exceptions overruled.*